The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO.  2:15-cr-00083-RAJ |
| Plaintiff, | |
| v. | ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |
| ANDREW LEE HARRIS, | |
| Defendant. | |

This matter comes before the Court on Defendant Andrew Lee Harris's motion for compassionate release.  Dkt. 136.  Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby **GRANTS** the motion for the reasons explained herein.

## I. BACKGROUND

Mr. Harris is a 32-year-old inmate currently detained at Federal Correctional Institution Lompoc.  On July 30, 2015, after an 8-day jury trial, he was found guilty of one count of Distribution of Heroin, two counts of Possession of Heroin with Intent to Distribute, one count of Possession of Methamphetamine with Intent to Distribute, one count of Possession of a Firearm in Furtherance of a Drug Trafficking Offense, one count of Felon in Possession of a Firearm, and one count of Possession of Methamphetamine. After the jury returned its verdicts on the above counts, the Court found Mr. Harris guilty

ORDER - 1

of an additional count of Felon in Possession of a Firearm after a bifurcated bench trial. Dkts. 97, 98, 100.  On December 18, 2015, this Court sentenced Mr. Harris to the mandatory minimum of 120 months of imprisonment, to be followed by five years of supervised release.  Dkt. 113.  Mr. Harris now moves for compassionate release arguing that he presents extraordinary and compelling reasons for the Court to reduce his sentence to time served and grant his immediate release.

## II. DISCUSSION

### A.    Legal Standard for Compassionate Release

18 U.S.C. § 3582(c)(1)(A) allows a court to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  The Sentencing Commission's policy statement, in turn, says that a court may reduce a term of imprisonment if "the defendant is not a danger to the safety of any other person or to the community" and "extraordinary and compelling reasons warrant such a reduction." United States Sentencing Guidelines ("USSG") § 1B1.13.  The policy statement clarifies that such reasons exist when (1) "the defendant is suffering from a terminal illness" or (2) "the defendant is suffering from a serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  USSG § 1B1.13 cmt. n.1.  The policy statement also directs a court to consider the factors set forth in 18 U.S.C. § 3553(a) in deciding whether compassionate release is appropriate and what form compassionate release should take.  USSC § 1B1.13 cmt. n.4.

Mr. Harris's motion seeks a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.  As amended, § 3582(c)(1)(A) permits an inmate, who satisfies certain statutorily mandated conditions, to file a motion with the sentencing court for "compassionate release."  As relevant to Mr. Harris's motion, the statute now provides:

(c) Modification of an imposed term of imprisonment. --The court may not modify a term of imprisonment once it has been imposed except that--

(1) in any case--

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

(i) extraordinary and compelling reasons warrant such a reduction;

. . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The relevant statute gives this Court authority to reduce a previously imposed sentence if three requirements are satisfied: (1) the inmate has either exhausted administrative review of the Bureau of Prison's failure to bring such a motion, or waited until 30 days after the request was made to the warden where the inmate is housed if that is earlier; (2) the inmate has presented extraordinary and compelling reasons for the requested reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement.

### B.    Exhaustion of Administrative Remedies

Prior to considering the merits of Mr. Harris's compassionate release motion, the Court must determine whether he has met the statutory exhaustion requirement for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A).

ORDER - 3

1    The parties agree that Mr. Harris has satisfied this requirement as on August 13,

2    2020, Mr. Harris, through his attorney, submitted a letter to the warden at FCI Lompoc

3    requesting that he be considered for compassionate release.  Dkt. 136, Ex. D.  He

4    received no response.  As the statutorily required 30-day period has expired, Mr. Harris's

5    motion is properly before the Court.

6    **C.      Extraordinary and Compelling Circumstances.**

7    The Court must next determine if extraordinary and compelling circumstances

8    warrant a reduction of Mr. Harris's term of imprisonment.  *See* 18 U.S.C.

9    § 3582(c)(1)(A)(i); USSG § 1B1.13.

10   The policy statement referenced in § 3582(c)(1) was promulgated by the

11   Sentencing Commission pursuant to the authority Congress vested in it in 28 U.S.C.

12   § 994. That statute provides:

13

14       The Commission, in promulgating general policy statements regarding the
         sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall
15       describe what should be considered extraordinary and compelling reasons for
         sentence reduction, including the criteria to be applied and a list of specific
16       examples. Rehabilitation of the defendant alone shall not be considered an
         extraordinary and compelling reason.
17

18   28 U.S.C. § 994(f).

19   Consistent with this statute, the applicable policy statement can be found at

20   Section 1B1.13 of the United States Sentencing Guidelines. That statement provides:

21       Upon motion of the Director of the Bureau of Prisons under 18 U.S.C.
         § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may
22       impose a term of supervised release with or without conditions that does not
         exceed the unserved portion of the original term of imprisonment) if, after
23       considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they
         are applicable, the court determines that--
24
         (1)(A) Extraordinary and compelling reasons warrant the reduction…
25
         (2) The defendant is not a danger to the safety of any other person or to the
26       community, as provided in 18 U.S.C. 3142(g); and
27

28

ORDER - 4

(3) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

 (4) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (2019).

In the commentary, the Commission goes on to explain what constitutes "extraordinary and compelling reasons" to support a reduction in sentence. Specifically, Application Note 1 provides that extraordinary and compelling reasons exist if the defendant is suffering from a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt.n.1.

Mr. Harris argues he suffers from health conditions that heighten his risk that he will suffer complications should he contract coronavirus-19 (COVID-19), specifically obesity, likely damage to his lungs from years of smoking methamphetamine, and asthma. He posits these three factors, when taken together, provide extraordinary and compelling reasons for compassionate release. Dkt. 136.

The government opposes Mr. Harris's motion, arguing that the only medical condition he has that is recognized by the Centers for Disease Control and Prevention (CDC) to increase his risk of serious complications from COVID-19 is obesity. The government points out, however, that the evidence provided by Mr. Harris to support that he is obese is the Presentence Report prepared in this matter in October of 2015, over five years ago. The government indicates there are no medical records setting forth a diagnosis of asthma for Mr. Harris, and that he has presented no evidence showing he has sustained any lung damage from smoking methamphetamine. Dkt. 145.

To be eligible for this Court to exercise its discretion for a reduced sentence, Mr. Harris bears the burden to show "extraordinary and compelling reasons" that meet the directives set by Congress and the Sentencing Commission for compassionate release to be granted. *See Riley v. United States,* C19-1522 JLR 2020 WL 1819838 at *7 (W.D.

Wash. Apr. 10, 2020); *United States v. Greenhut,* No. 2:18-CR-00048, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020.

When an inmate has health conditions that make them significantly more vulnerable to COVID-19, that likewise may constitute an extraordinary and compelling circumstance. *See e.g., United States v. Cosgrove,* Case No. CR15-0230-RSM, -F. Supp. 3rd-, 2020 WL 1875509 (W.D. Wash. April 15, 2020; *United States v. Dorsey,* Case No. CR16-0138-BLW-JCC, 2020WL 2562878 (W.D. Wash. May 19, 2020).

While some courts have held that the Sentencing Commission's policy statement on compassionate release remains controlling in the wake of the First Step Act, this Court agrees with the position taken by numerous courts that the "old policy statement provides helpful guidance, [but]…does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)." *United States v. Cosgrove, Id.; United States v. Rodriguez,* 2020 WL 1627331, (E.D. Penn. Apr. 1, 2020; *United States v. Almontes,* 2020 WL 1812713 (D. Conn. Apr. 9, 2020); *United States v. Haynes,* No. 93 CR1043 (RJD), 2020 WL 1941478 (E.D. N.Y. Apr. 22, 2020); and *United States v. Maumau,* No. 2:08-cr-00758-TC-11, 2020 WL 806121 (D. Utah, Feb. 18, 2020).

Mr. Harris has represented, and his Presentence Report (PSR) confirms, that at least at the time of sentencing he was 5'10" and weighed 225 pounds. As of that date, he met the CDC's definition of obesity with a BMI of 32 or 33. This condition alone is sufficient to establish an extraordinary and compelling reason to warrant a sentence reduction. The CDC has identified obesity as an actual risk for increased risk of severe illness from COVID-19.

The government challenges Mr. Harris's claim of obesity for his failing to provide recent documentation from the Bureau of Prisons (BOP) that reflects his current weight. The government ignores that we are in a pandemic and Lompoc has been the subject of significant litigation surrounding the COVID-19 conditions at that facility. Under normal times it would be a slight inconvenience for the medical staff to confirm Mr. Harris's

ORDER - 6

weight.  The Court agrees with Mr. Harris that this Court should not expect Lompoc medical staff to accommodate Mr. Harris's request for an official statement of his current weight when the Court is confident that other inmates with greater priority need treatment and health care, especially those affected by the virus.  Dkt. 147, p. 3.  Under these circumstances, the Court accepts the PSR confirmation of Mr. Harris's weight, as well as his current representation that his weight has not changed since his incarceration.  These two sources appear to mirror each other.

In addition to his obesity, Mr. Harris has a documented history of being a chronic smoker of methamphetamine.  Dkt. 147, p. 5.  The CDC includes "smoking" as a medical condition that puts him on the same heightened list as obesity.  While the CDC guidelines do not specifically call out "smoking methamphetamine" as meeting the guideline definition, the damage of that type of abuse on one's lungs for years can only exacerbate the damage to the respiratory system.  Effective November 2, 2020, the CDC noted smoking as a stand-alone medical condition that heightens one's risk of severe illness from a COVID-19 infection.  If prolonged smoking of tobacco is now a risk factor by the CDC, it is hard to imagine that a prolonged history of inhalation of methamphetamine would not be even more egregious to one's health.

Mr. Harris also contends he has asthma.  The medical records do not document he has this condition and the PSR does not mention it.  His BOP records at best reference allergies but nothing more in terms of medical verification.  The CDC has not included asthma as one of the conditions that leads to an increased risk of severe illness from COVID-19 but has indicated that moderate to severe asthma might increase the risk of severe illness.  Mr. Harris has not provided any medical evidence that he suffers from moderate to severe asthma or medical verification of any type to support this claim.  Hence this claim will not serve as a basis for the Court to grant his request for relief.

In view of the foregoing, the Court finds that Mr. Harris's combination of conditions as noted demonstrate his vulnerability to COVID-19 as a serious medical

condition that constitutes an extraordinary and compelling circumstance warranting compassionate release under the U.S. Sentencing Guidelines.

### D. Safety of Others

The Court next turns to whether Mr. Harris presents a danger to the safety of any other person or to the community. *See* U.S.S.G. §1B1.13(2).  In making this determination, the Court looks to the nature and circumstances of the underlying offense, the weight of evidence against him, his history and characteristics, and the nature and seriousness of the danger his release would pose to any person or the community. 18 U.S.C. §3142(g).  The Court may not reduce a defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

Mr. Harris indicates that any danger he may pose to the community if released early could be mitigated by an extension of his term of supervised release, and that he would agree to an additional special condition requiring location monitoring and/or home confinement.  Mr. Harris argues that his release plan and strong family support should further minimize the Court's concerns regarding his potential danger to the community if released early.  Dkt. 136.

The government counters that the serious nature of Mr. Harris's crimes in this matter, including the involvement of firearms, his criminal history, his failure to accept responsibility for his current crimes of conviction, and the lack of mitigating factors demonstrate that Mr. Harris continues to present a danger to the community.  Dkt. 145.

The Court has reviewed Mr. Harris's proposed release plan.  It calls for him to live with his cousin James Lowe who has agreed to serve as a third-party custodian.  The plan includes the strong possibility of employment for Mr. Harris.  The plan and the expectations of Mr. Harris sharing in the care of his elderly mother, all combined, satisfies the Court that he presents a low risk to the community if released, especially

since his first six months on supervision will come with six months on home-confinement.

The Court disagrees with the government's analysis and finds that the record and proposal submitted by Mr. Harris outweighs its generalized danger concerns with releasing Mr. Harris.  The Court's conclusion is not intended to minimize the facts that served as the basis for his underlying conviction.  Dealing methamphetamine and heroin with a firearm present is extremely dangerous and of significant concern to this Court.  Mr. Harris was sentenced, however, to a mandatory term of imprisonment which the Court finds harsh under the circumstances.  His conviction alone should not serve as a barrier to the changed circumstances presented by COVID-19.

**E.  Other 18 U.S.C. § 3553(a) Factors**

In determining whether to grant Mr. Harris's compassionate release under 18 U.S.C. § 3582(c)(1)(A), the Court also considers the relevant factors other than noted above as set forth under 18 U.S.C. § 3553(a).  These factors include the need for the sentence imposed, the kinds of sentences available, promoting respect for the law, providing just punishment for the offense, avoiding unwarranted sentencing disparities, and providing medical care in the most efficient manner.  18 U.S.C. § 3553(a)(2)(B, C, D); 18 U.S.C. § 3582(c)(1)(A).

Mr. Harris argues that he has received just punishment for his offenses in that had the government not made the decision to charge him with two crimes carrying consecutive 5-year mandatory minimum sentences, and instead had chosen to charge him with just one offense carrying a mandatory minimum, and had Mr. Harris entered a plea of guilty rather than exercise his right to go to trial, pursuant to the ranges set forth in the sentencing guidelines, he most likely would have been already released to the community by now.  Dkt. 136.

The government contends that the § 3553(a) factors weigh against Mr. Harris's release.  Specifically, with respect to the sentencing guidelines, given the guidelines

range for the crime of Possession of a Firearm in Furtherance of a Drug Trafficking Crime of 60 months consecutive to any other sentence, the government indicates the Court imposed a sentence below the low end of the guidelines range. The government argues that Mr. Harris's sentence satisfies the § 3553(a) factors and should be maintained as originally imposed by the Court. Dkt. 145.

In analyzing the sentence imposed, it should come as no surprise that this Court was saddled with two mandatory minimum sentences requiring a mandated sentence of ten years. The Court reaffirms that it felt handcuffed to the charging scheme of the government that following conviction eliminated any lawful means for this Court to give anything but consecutive five-year sentences. At sentencing the Court was not effectively permitted to consider the § 3553(a) factors for a sentence below the mandatory minimum sentences.

By the time this Order is issued, and Mr. Harris released from custody, he will have served nearly 70 months of his 120-month sentence. While the Court would certainly have sentenced Mr. Harris to at least five years in custody, it would not have imposed a ten-year sentence, particularly when considering the quantity of drugs charged in this case, 23 grams of methamphetamine and 37 grams of heroin. The factors the Court has utilized to reach this conclusion are the nature and circumstances of the offense, the need for the sentence to reflect the seriousness of the offense and to provide just punishment for the offense.

As to the need to afford adequate deterrence, the Court will place Mr. Harris on house arrest for the first six months of his release. Mr. Harris will be under the supervision of the U.S. Probation Office for five years. The Court is satisfied this amount of time will be sufficient to determine if he has effectively been deterred from future misconduct as the Court will most assuredly place him back in prison if not.

Upon release, Mr. Harris will have the support of his family. That he can be safely released is enhanced by the fact that the United States Probation Office has approved of his release address where he will be living

ORDER - 10

**G.  Additional Term of Supervised Release**

18 U.S.C. § 3582(c)(1)(A) authorizes a reduction in sentence.  It also permits the Court to "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment."

The Court finds that an additional term of supervised release is unnecessary or warranted.  However, the Court finds that as an additional condition of the supervised release previously imposed, Mr. Harris shall serve six months of home confinement with the same standard and special conditions of the original term of supervised release.

## III.  CONCLUSION

For the foregoing reasons, Defendant Andrew Harris's motion for compassionate release is **GRANTED**.  The Court hereby **ORDERS** that Mr. Harris's term of imprisonment be reduced to time served and that he be released 14 days from the date of this Order to accommodate a quarantine period with the Federal Bureau of Prisons.  If Mr. Harris tests COVID-19 positive at any time during this quarantine period, BOP shall notify the government who in turn shall immediately notify this Court so this Order can be modified accordingly.  The Court makes this determination because he will be traveling from a state where COVID-19 is surging.  Mr. Harris is **ORDERED** to contact the United States Probation Office within 24 hours of his release and follow its instructions.

The Court further **ORDERS** that as an additional condition of supervised release, Mr. Harris shall serve six months in home confinement subject to the standard and special conditions of the original term of supervised release.  In addition, the Court **ORDERS** that Mr. Harris shall participate in the location monitoring program with Active Global Positioning Satellite technology for a period of six months.  Mr. Harris is restricted to his residence at all times except for employment, religious services, medical, legal reasons, or as otherwise approved by the location monitoring specialist.  Mr. Harris shall abide by all program requirements, and must contribute towards the costs of the

services, to the extent financially able, as determined by the location monitoring specialist.

### III.  CONCLUSION

For the foregoing reasons, Defendant Andrew Lee Harris's motion for compassionate release is **GRANTED**.

IT IS SO ORDERED.

DATED this 19th day of January, 2021.

The Honorable Richard A. Jones
United States District Judge

ORDER - 12